[No. 4916-7-III.   Division Three.   May 3, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. MARVIN K. KAISER, *Appellant.*

560

*David P. Hazel,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Rick L. Hoffman, Deputy,* for respondent.

MUNSON, A.C.J.—Marvin K. Kaiser appeals his incest conviction, RCW 9A.64.020.[1] He contends the trial court erred in admitting his confession, the evidence was insufficient, improper evidence was admitted at trial, and the incest statute denied him equal protection. We affirm.

Mr. Kaiser was charged with having committed incest with his 16–year–old stepdaughter. On May 13 and 14, Mr. Kaiser met with a police detective to informally discuss the accusation. On May 15, 1981, Mr. Kaiser was advised of his rights as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), and progeny. He indicated he wished to speak to an attorney.

---

[1]Former RCW 9A.64.020:

"(1) A person is guilty of incest if he engages in sexual intercourse with a person whom he knows to be related to him, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.

"(2) *As used in this section, "descendant" includes stepchildren* and adopted children *under eighteen years of age.*" (Italics ours.)

The questioning stopped; the detective made immediate arrangements for Mr. Kaiser to meet with a public defender who was present at the jail. Mr. Kaiser and the public defender discussed the charge for 20 to 25 minutes. Mr. Kaiser stated the public defender told him the crime was a felony and advised him not to make a statement.

Mr. Kaiser returned to the detective and decided to make a statement. The detective gave him the *Miranda* warnings from a printed form which Mr. Kaiser initialed and signed. The detective then taped an oral confession from Mr. Kaiser which also began with a waiver of all *Miranda* rights. Mr. Kaiser stated he entered the step-daughter's bed against her will, disrobed her, engaged in full intercourse for a brief time, realized he had erred, and left. At the end of the statement, Mr. Kaiser signified the statement was true, he understood his *Miranda* rights and waived them, and no promises had been made.

Prior to trial, Mr. Kaiser moved to suppress the statement. A CrR 3.5 hearing was held in which Mr. Kaiser stated the statement was given only to avoid any publicity. He alleged the detective promised to keep the matter confidential, made the crime appear insignificant, promised to discuss leniency with the prosecutor in return for Mr. Kaiser's cooperation and indicated Mr. Kaiser would serve only 3 to 5 days in jail. Mr. Kaiser admitted on cross examination no promises of any sort had been made, but stated the detective "sure made things look good." Mr. Kaiser also stated the public defender told him the sentence for a class C felony was "possibly 30 days." He testified neither the detective nor the public defender told him the penalty could be 5 years in prison, and the first time he learned the seriousness of the charge and penalty was at his arraignment. The detective agreed he had promised to handle the investigation confidentially, but stated he had made no promises concerning leniency. He also testified he read the statute to Mr. Kaiser from "the book". Invoking the attorney/client privilege, the public defender refused to testify to his discussion with Mr. Kaiser. There is no evidence Mr.

Kaiser released the public defender from that privilege.

The court held the statement was admissible because Mr. Kaiser had received all constitutional considerations, had not been deceived or misled, and had knowingly waived his constitutional rights. The court further stated any promises of confidentiality related merely to publicity and not to any plea or conviction on the charge. Finally, the court stated the detective had no affirmative duty to inform defendant of the maximum penalty of the charge as long as the defendant was clearly aware of the seriousness of the charge.

At the subsequent nonjury trial, the stepdaughter testified Mr. Kaiser had engaged in sexual intercourse against her wishes. She was asked whether her stepfather put his penis into her vagina. She replied that he had and that she knew this because of the pain. On cross examination, she was asked whether there was penetration. She replied, "I can't be sure."

Mr. Kaiser denied the event altogether. He again explained the false statement was given to the detective to protect the family from publicity.

The stepdaughter's boyfriend testified she told him the following day that she had been raped by her stepfather. The boyfriend indicated she was distraught and cried for over an hour and a half before telling him; they later reported the incident to school officials.

The detective who received Mr. Kaiser's statement was asked by Mr. Kaiser's counsel whether he had recorded in any statement by the stepdaughter anything which showed penetration had occurred. From her statement, the detective testified she had told him Mr. Kaiser inserted his penis in her vagina. The detective testified he explained the terms to her prior to the statement and she stated she understood them.

The trial court found Mr. Kaiser guilty of incest, reasoning that where the stepdaughter's testimony was equivocal the confession was not. Because the trial court could not accept Mr. Kaiser's stated reasons for making a false state-

ment, the court accepted the statement over the in–court testimony. The court found the stepdaughter's version to be more credible.

Mr. Kaiser first contends his statement should have been suppressed. To him, waiver was not voluntary and knowing because he was unfamiliar with the legal system and the waiver allegedly was coerced by a promise of confidentiality. We disagree.

Once an accused asserts his right to remain silent and his right to counsel, all interrogation *must cease* until an attorney is present "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U.S. 477, 485, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981); *Miranda v. Arizona, supra; State v. Robtoy,* 98 Wn.2d 30, 653 P.2d 284 (1982); *State v. Pierce,* 94 Wn.2d 345, 618 P.2d 62 (1980). The right to counsel at this point must be "'scrupulously honored.'" *Michigan v. Mosley,* 423 U.S. 96, 104, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975); *State v. Grisby,* 97 Wn.2d 493, 504, 647 P.2d 6 (1982).

An accused may subsequently waive his right to counsel if, "'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused", waiver is a voluntary, "knowing and intelligent relinquishment or abandonment of a known right or privilege". *Edwards v. Arizona, supra* at 482 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019, 1023 (1938)). If the accused initiates the conversation, police may listen to "voluntary, volunteered statements and [use] them against him at the trial." *Edwards v. Arizona, supra* at 485; *State v. Collins,* 30 Wn. App. 1, 8, 632 P.2d 68 (1981). The burden is on the State; it must show voluntary, knowing and intelligent waiver by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 30 L. Ed. 2d 618, 92 S. Ct. 619 (1972); *State v. Robtoy, supra; State v. Braun,* 82 Wn.2d 157, 509 P.2d 742 (1973).

In deciding whether a waiver was knowing and intelligent, the test focuses on whether Mr. Kaiser "under-

stood his right to counsel and intelligently and knowingly relinquished it." *Edwards v. Arizona, supra* at 484. The focus here is on Mr. Kaiser's background and experience, the conduct of Mr. Kaiser and the police, and Mr. Kaiser's understanding of his right to counsel and of the charge against him.

Mr. Kaiser is a high school graduate. He made the decision without police prompting after consulting with his wife and a public defender who advised him to make no statement. The record shows Mr. Kaiser was aware of the seriousness of the crime. Prior to making the statement, Mr. Kaiser was thrice given *Miranda* warnings which included his rights to counsel and to remain silent.

The promise of confidentiality given the Kaisers does not rise to the level of a coercive tactic. *Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). Mr. Kaiser admitted there were no promises and signed two waivers which stated "any statement that I do make can and will be used as evidence against me in a court of law." We hold waiver of the right to counsel was knowingly and intelligently made; Mr. Kaiser's statement was therefore admissible.

Mr. Kaiser next contends the evidence of penetration was insufficient. He contends the stepdaughter's answer on cross examination raised a reasonable doubt. Her testimony was not as equivocal as first appears. On direct, she gave no doubt penetration had occurred. She may not have known the meaning of the word "penetration" because there is a question of whether she knew the meaning of the word "erection". This confusion was not clarified.

Even if a doubt remained after her testimony, Mr. Kaiser's statement and the testimony of both the boyfriend and the detective bolstered her credibility. Although Mr. Kaiser's statement differed from the stepdaughter's testimony in the degree of violence, it essentially agreed on the specific act of intercourse. In *State v. Nicholson,* 77 Wn.2d 415, 421, 463 P.2d 633 (1969), the court stated the prosecuting witness' inability to identify the accused was unim-

portant where the accused confessed, the confession was consistent with the witness' story, and independent evidence existed to corroborate the accounts. Here, the statement agreed with the witness' testimony and further corroboration was provided from the boyfriend and the stepdaughter's statement to the detective. The "fact of complaint" rule, although not substantive, allows evidence of complaint to bolster the complaining witness' credibility. *State v. Hunter,* 18 Wash. 670, 52 P. 247 (1898); *State v. Bray,* 23 Wn. App. 117, 594 P.2d 1363 (1979).

Mr. Kaiser contends the prior consistent statement of the stepdaughter was not admissible. We disagree. First, the defense attorney introduced the prior statement; if the statement was admitted in error, it was self–invited error which precludes review. *Rao v. Auburn Gen. Hosp.,* 19 Wn. App. 124, 573 P.2d 834 (1978). Second, a prior consistent statement is not hearsay and is admissible under ER 801(d)(1)(ii). Had the statement been offered by the State, it would have been admissible to rebut charges of recent fabrication, which was Mr. Kaiser's defense.

Mr. Kaiser next contends his cross examination of the stepdaughter was impermissibly limited by the trial court. The record contains no limitation of cross examination. In the two situations cited, the State objected to the questions, but Mr. Kaiser was allowed to proceed. There was no error.

Mr. Kaiser finally contends the incest statute denies him equal protection of the law. His argument appears to be twofold: (1) because the "object of the statute was obviously to prevent a procreation of children which may be affected by the relationship of the parties who are closer than second cousins", the inclusion of stepchildren bears no rational relationship to a legitimate governmental objective; and (2) nonconsensual intercourse is punished until age 16 under the statutory rape statutes;[2] equal protection is

---

[2]RCW 9A.44.090(1):
"(1) A person over eighteen years of age is guilty of statutory rape in the third

denied under the incest statute because even consensual intercourse is forbidden to age 18.

Historically, incest was prohibited by ecclesiastical canon; now, it is prohibited by statute. The statutory schemes differ; some states prevent illicit intercourse by consanguinity while others also include relation by affinity. R. Perkins, *Criminal Law* ch. 5, § 1(c), at 383–84 (2d ed. 1969); *Crimes (Clark & Marshall)* § 11.05, at 770 (M. Barnes 7th ed. 1967); 2 C. Torcia, *Wharton on Criminal Law* § 245, at 403–04 (14th ed. 1979).

Prevention of mutated birth is only one reason for these statutes. The crime is also punished to promote and protect family harmony, to protect children from the abuse of parental authority, and because society cannot function in an orderly manner when age distinctions, generations, sentiments and roles in families are in conflict. M. Barnes, *supra* at 770; 2 C. Torcia, *Wharton on Criminal Law* § 242, at 400 (14th ed. 1979). Thus, the statute bears a rational relation to a legitimate governmental objective. *State v. Smith,* 93 Wn.2d 329, 610 P.2d 869, *cert. denied,* 449 U.S. 873 (1980). The legislation bears a reasonable and substantial relationship to the health, safety, morals or welfare of the public. *Duckworth v. Bonney Lk.,* 91 Wn.2d 19, 586 P.2d 860 (1978). We hold the statute is therefore constitutional.

Mr. Kaiser notes consensual intercourse is not punishable after a female reaches age 16 except under the incest statute where even consensual intercourse is forbidden to age 18. He then asserts: "Had the defendant chosen merely to live with the mother of Connie, he would have incurred no penalties because of his act of intercourse with the child, . . ." Disregarding the fact that this intercourse was not consensual, and was therefore punishable as third degree rape, such a distinction would deny equal protection only if

degree when such person engages in sexual intercourse with another person, not married to the perpetrator, who is fourteen years of age or older but less than sixteen years old."

Mr. Kaiser could show the Legislature did not have a legitimate interest in discriminating between such individuals. *State v. Devine,* 84 Wn.2d 467, 527 P.2d 72 (1974). As noted earlier, incest is a crime which affects the individuals, society, and, to a degree greater than other crimes, the family. The additional 2 years can be seen as an important protection for the family. The State has a legitimate interest in protecting children from parental abuse for an additional 2 years. Whether by consanguinity or affinity, parents have tremendous emotional and material leverage, even after a child reaches 16, which may not exist outside the home. The distinction is reasonable.

Mr. Kaiser's conviction is affirmed.

GREEN and McINTURFF, JJ., concur.

Reconsideration denied May 27, 1983.

Review denied by Supreme Court July 19, 1983.