# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### FEBRUARY SESSION, 1999

**FILED**

March 25, 1999

Cecil W. Crowson
Appellate Court Clerk

AMI E. SMITH,                )
                             )
      Appellant     )
                             )
vs.                          )
                             )
STATE OF TENNESSEE,          )
                             )
      Appellee      )

No. 01C01-9811-CR-00438

WILSON COUNTY

Hon. J. O. Bond, Judge

(Post-Conviction)

For the Appellant:

**Henry Clay Barry**
Attorney at Law
106 S. College
Lebanon, TN  37087

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Kim R. Helper**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Tom P. Thompson, Jr.**
District Attorney General

**Robert Hibbett**
Asst. District Attorney General
119 College Street
Lebanon, TN  37087

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

**OPINION**

The appellant, Ami E. Smith, appeals the Wilson County Criminal Court's dismissal of her petition for post-conviction relief. The appellant collaterally attacks her conviction for incest upon the ground that Tenn. Code Ann. § 39-15-302 violates her state constitutional right to privacy. Accordingly, she argues Tennessee's incest statute is unconstitutional and her conviction for this offense is void.

After review of the record, we affirm the trial court's denial of post-conviction relief.

**Background**

On March 13, 1997, the appellant entered a guilty plea to one count of incest[1] and was sentenced to three years supervised probation. As a condition of her probation, the appellant was required to wear an electronically monitored ankle bracelet. She destroyed the bracelet, and, as a result of this conduct, was charged with the crime of vandalism. The appellant pled guilty to the charge of vandalism and was sentenced to two years in the Community Corrections program. This sentence was ordered to run consecutive to her three year sentence for incest, which was revoked and reimposed as a Community Corrections sentence. Within three months of being placed in the Community Corrections program, the appellant violated at least seven of the terms and conditions of her behavioral contract. Based on these new violations, the trial court revoked her Community Correction sentences and ordered that the appellant serve her effective five year sentence in the Department of Correction.

---

[1]The indictment charged and it is not disputed that the appellant was involved in an incestuous relationship with her paternal uncle. The appellant does not deny this relationship. We are able to glean from the sparse record before us that the incestuous relationship began while the appellant was still a minor and continued into her majority. Her uncle was in his mid-thirties when the relationship began. No children were born as a result of this relationship. The appellant's brief indicates that she suffers from various psychological disorders and was eighteen years old when charged with this offense.

No appeal was taken from either conviction or sentence. As a result, the appellant is currently confined in the Tennessee Women's Prison. On April 14, 1998, the appellant filed the present petition for post-conviction relief. As the sole ground for relief, the appellant avers that "the crime of incest, between consenting adults, in a private and non-commercial setting is unconstitutional under the privacy provisions of the State Constitution and [the court must] set aside her conviction for the same."[2] On October 15, 1998, the trial court denied the appellant relief. In dismissing the petition, the trial court found this state's incest statute constitutionally valid.

**Analysis**

Again, the appellant's sole assignment of error is whether Tenn. Code Ann. § 39-15-302 is unconstitutional under the protections provided by the Constitution of the State of Tennessee.[3] Specifically, the appellant relies upon the Court of Appeals decision in Campbell v. Sundquist, 926 S.W.2d 250, 262 (Tenn. App.), perm. to appeal denied, (Tenn. 1996) (finding the Homosexual Practices Act unconstitutional), for the proposition that "an adult's right to engage in consensual and noncommercial sexual

---

[2]As a corollary argument, the appellant asserts that, should this court find Tennessee's incest statute unconstitutional under our state constitution, her conviction and sentence for vandalism should also be set aside as it arose from her invalid conviction for incest.

[3]The Post-Conviction Procedure Act provides prisoners a procedure for relief when their conviction is void or voidable based upon the abridgement of a state or federal constitutional right. Tenn. Code Ann. § 40-30-203. The appellant avers that Tennessee's statute making incest a punishable offense infringes upon her state fundamental right to privacy. Thus, the issue is cognizable in a post-conviction proceeding. Moreover, the State asserts that the appellant has waived determination of this issue on appeal for failure to raise the issue at prior hearings. However, the State did not present the statutory defense of waiver at the post-conviction level. Therefore, we decline to adopt the position of the State taken for the first time on appeal. See Rule 36(a), Tenn. R. App. P.; State v. White, 635 S.W.2d 396, 398 (Tenn.Crim.App.1982). Accordingly, the issue is entitled to a merits review because the State failed to plead waiver as an affirmative defense.

3

activities in the privacy of that adult's home is a matter of intimate personal concern which is at the heart of Tennessee's protection of the right to privacy."[4]

The right to privacy is addressed within the context of due process guaranties. Protection against infringement of fundamental rights is guaranteed by both the United States and Tennessee Constitutions. See U.S. CONST. amend. XIV; TENN. CONST. Art. I., § 8; TENN. CONST. Art. XI, § 8. See generally State v. Tester, 879 S.W.2d 823, 827 (Tenn. 1994). When a challenge is made alleging infringement of a fundamental right, "strict scrutiny" of the legislative classification is only required when the classification interferes with the exercise of a "fundamental right" or operates to the peculiar disadvantage of a suspect class. See Evans v. Steelman, 970 S.W.2d 431, 435 (Tenn. 1998); Tester, 879 S.W.2d at 827 (citations omitted). However, if no fundamental right or suspect class is affected, the court must determine whether there is some rational basis to justify a classification set out in a statute. Steelman, 970 S.W.2d at 435 (citation omitted). There is no dispute that the challenged statutory provision does not involve a suspect class, thus, our initial determination remains whether the appellant's right to privacy encompasses a guaranteed protected "fundamental right"[5] to engage in incestuous sexual activity.

Neither the United States Constitution nor the Tennessee Constitution specifically refers to a "fundamental right to privacy."[6] Nonetheless, it is well recognized that both documents contemplate such a fundamental right. See Davis v. Davis, 842 S.W.2d 588, 598-603 (Tenn. 1992), cert. denied, 507 U.S. 911, 113 S.Ct.

---

[4]The appellant expressly reserves determination of the issue solely on Tennessee constitutional law. For this reason, this court deems it unnecessary to separately analyze her claim under the federal constitution.

[5]"Fundamental rights" have been defined by the United States Supreme Court as "those fundamental rights that are implicit in the concepts of ordered liberty such that neither liberty nor justice would exist if they were sacrificed." See Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149 (1937), *overruled on other grounds by*, Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056 (1969).

[6]But see ALASKA CONST., Art. I, § 22 (right to privacy explicitly reserved therein); ARIZ. CONST., Art. II, § 8 (same); HAW. CONST., Art. I § 6 (same); ILL. CONST., Art. I, § 6 (same); LA. CONST., Art. I. § 5 (same); MONT. CONST., Art. III § 10 (same); S. C. CONST., Art. I. § 10 (same); WASH. CONST., Art. I, § 7 (same).

1259 (1993). Indeed, the right of privacy is unanimously understood to exist in the penumbra of various constitutional provisions. Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 94 S.Ct. 1879 (1974) (recognizing privacy is a fundamental right guaranteed by the federal constitution); Davis, 842 S.W.2d at 600 (recognizing right to privacy guaranteed by the Tennessee Constitution). To illustrate, the right of privacy as guaranteed by the Tennessee Constitution may be found in "Section 3 guaranteeing freedom of worship;" "Section 7 prohibiting unreasonable searches and seizures;" Section 19 guaranteeing freedom of speech and press;" and "Section 27 regulating the quartering of soldiers." Davis, 842 S.W.2d at 600.

Without doubt, our society is interested in protecting the privacy of the individual citizen from violation by way of intrusion into his home, publicizing his purely personal affairs, compelling divulgence of his views and beliefs which would expose the citizen to extra legal sanctions and from inroads into the individual's repose and relaxation. CHESTER JAMES ANTIEAU, MODERN CONSTITUTIONAL LAW (2d ed. 1997). Accordingly, the right to privacy promises a realm of personal liberty, except in very limited circumstances, which the government may not enter, and the result is a right of personal privacy, or a guarantee of certain areas or zones of privacy. See Planned Parenthood v. Casey, 505 U.S. 833, 847, 112 S.Ct. 2791, 2805 (1992); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243 (1969); see also 16B AM. JUR. 2d Constitutional Law § 603 (1998). This right, also referred to as "the right to be let alone," see Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572 (1928) (Brandeis, J., dissenting), overruled on other grounds by, Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873 (1967) and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507 (1967); see also Davis, 842 S.W.2d at 599, has been interpreted by the Supreme Court to provide protection against governmental interference in a broad array of human affairs. See, e.g., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705 (1973) (right to abortion), holding modified by, Casey, 505 U.S. at 833, 112 S.Ct. at 2791; Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029 (1972) (right to use contraceptives); Loving v. Virginia, 388 U.S. 1,

5

87 S.Ct. 1817 (1967) (right to marry); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678 (1965) (right to marital privacy); Rochin v. California, 342 U.S. 165, 72 S.Ct. 205 (1952) (right to bodily integrity); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438 (1944) (right to family relationships); Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110 (1942) (right to procreate); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625 (1923) (right to direct education of children). It is clear from the precedent established by the Supreme Court that the constitutional right of privacy places limits on a state's right to interfere with a person's most basic decisions regarding family and parenthood. See Casey, 505 U.S. at 849, 112 S.Ct. at 2806. Compare Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841 (1986) (no right to engage in homosexual sodomy); Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1878) (no right to practice polygamy).

Notwithstanding the individual rights heretofore recognized as embraced within the right to privacy, there is no general endorsement of an "all-encompassing 'right of privacy.'" Casey, 505 U.S. at 952, 112 S.Ct. at 2859 (Rehnquist, C.J., dissenting). Indeed, the courts "ha[ve] always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." Washington v. Glucksberg, -- U.S.--, 117 S.Ct. 2258, 2267 (1997). In determining which rights are fundamental, the courts are not unrestrained to decide cases in light of their personal and private notions. Griswold, 381 U.S. at 493, 855 S.Ct. at 1686-87. Rather, if the right cannot be logically deduced from the text of the Constitution, "the court must look to the traditions and collective conscience of our people to determine whether a principle is so rooted as to be ranked as fundamental."[7] Id. at 493, 85 S.Ct. at 1686-87; see also Glucksberg, -- U.S. at --,

_____

[7]We acknowledge precedent recognizing a more extensive right of privacy under both the Tennessee Constitution and this State's constitutional jurisprudence than the corresponding right to privacy provided by the Federal Constitution. See Campbell v. Sundquist, 926 S.W.2d at 261. Indeed, our supreme court has stated "there is no reason to assume that there is a complete congruency between our constitution and its federal counterparts." Davis, 842 S.W.2d at 600. Notwithstanding the broader protection afforded by the Tennessee Constitution, under which Tennessee's incest statute is today uniquely challenged, we conclude that guidance by precedent established by the United States Supreme Court in defining the boundaries of protected liberty

117 S.Ct. at 2262; <u>Casey</u>, 595 U.S. at 980, 112 S.Ct. at 2874 (Scalia, J., dissenting); <u>Ohio v. Akron Center for Reproductive Health</u>, 497 U.S. 502, 110 S.Ct. 2972, 2984 (1990) (Scalia, J., concurring). With these historical notions at hand, the court must then ask "whether a right invoked is of such a character that it cannot be denied without violating these fundamental principles of liberty and justice which are at the base of all of our civil and political institutions." <u>Griswold</u>, 381 U.S. at 493, 85 S.Ct. at 1686-87. In so doing, the court must be mindful to "exercise the utmost care . . . lest the liberty protected . . . be subtly transformed into the policy preference of the . . . court." <u>Glucksberg</u>, -- U.S. at ---, 117 S.Ct. at 2268 (citing <u>Moore v. East Cleveland</u>, 431 U.S. 494, 502, 97 S.Ct. 1932, 1937 (1977)).

In tracing the tradition and customs encompassing an asserted right or privilege, the reviewing court must narrowly prescribe " a careful description" of the asserted fundamental right in order to prevent the promulgation of a constitutional rule of law broader than that required by the precise facts before us. <u>Glucksberg</u>, -- U.S. at --, 17 S.Ct. at 2268. Indeed, "speaking no more broadly than is absolutely required avoids throwing settled law into confusion; doing so . . . preserves a chaos that is evident to anyone who can read and count."[8] <u>Webster v. Reproductive Health Services</u>, 492 U.S. 490, 535, 109 S.Ct. 3040, 3065 (1989) (Scalia, J., concurring). <u>See, e.g.</u>, <u>Bowers v. Hardwick</u>, 478 U.S. at 196-96, 106 S.Ct. at 2846 (Court recognized, in holding no fundamental right for homosexuals to engage in sodomy, problems associated with expanding scope of asserted right to include voluntary sexual conduct between consenting adults including exposure to incest, polygamy, and other prohibited crimes committed in the home). Thus, we decline the appellant's invitation to broadly construe

---

interests is appropriate and not antithetical to our state constitution. <u>Cf</u>. <u>Davis</u>, 842 S.W.2d at 600 ("the right to privacy incorporates some of the attributes of the federal constitutional right to privacy and, in any given fact situation, may also share some of its contours").

[8]The holding In <u>Campbell v. Sundquist</u>, 926 S.W.2d at 250, ignores the Supreme Court's warning against overextending the scope of an asserted "fundamental right." In declaring the Homosexual Practices Act unconstitutional, a panel of the Court of Appeals determined that, under the Tennessee Constitution, a fundamental right exists in "an adult's right to engage in consensual and noncommercial sexual activities in the privacy of that adult's home." <u>Campbell</u>, 926 S.W.2d at 262. Clearly, the ultimate holding in <u>Campbell</u> sweeps too broadly as forewarned by Justice Scalia.

incest as part of an alleged right to engage in private consensual non-commercial sexual activity. Rather, we perform our review within the narrower boundaries of an asserted right to engage in incestuous relationships.

Incest is the sexual intercourse or marriage between persons related to each other in any of the degrees of consanguinity or affinity that is prohibited by law.[9] See Tenn. Code Ann. § 39-15-302; 42 C.J.S. *Incest* § 2 (1991). The taboo against incest has been a consistent and almost universal tradition with recorded proscriptions against incest existing as early as 1750 B.C.[10] The incest taboo has been characterized as one of the most important human cultural developments and is found in some form in all societies. Being primarily cultural in origin, the taboo is neither instinctual nor biological and has little to do with actual blood ties.[11] See Benton v. State, 461 S.E.2d 202, 205 (Ga. 1995) (Sears, J., concurring). Anthropologists and sociologists claim the significance of the incest taboo is twofold: (1) the restriction forces family members to go outside their families to find sexual partners, requiring people to pursue relationships outside family boundaries that help form important economic and political alliances, and (2) to maintain the stability of the family hierarchy by protecting young family members from exploitation by older family members in positions of authority and by reducing competition and jealous friction among family members. Id.

---

[9]Tenn. Code Ann. § 39-15-302 provides:
(a) A person commits incest who engages in sexual penetration as defined in § 39-13-501, with a person, knowing such person to be, without regard to legitimacy:
    (1) The person's natural parent, child, grandparent, grandchild, uncle, aunt, nephew, niece, stepparent, stepchild, adoptive parent, adoptive child; or

    (2) The person's brother or sister of the whole or half-blood or by adoption.

(b) Incest is a Class C felony.

[10]Discovered in 1901, the Code of Hammurabi, a Babylonian king, punished the incestuous relationship between mother and son by burning of both parties at the stake. See SARA ROBBINS, LAW: A TREASURY OF ART AND LITERATURE 20-22 (1990).

[11]The unimportance of blood ties in the prohibition of incest is evident from society's condemnation of incestuous relations long before people knew of its genetic effects.

Although the ban on incest was widely followed in all societies, incest was not a common law crime in England; rather, punishment was left solely to the ecclesiastical courts. See People v. Baker, 69 Cal. Rptr. 595, 597 (1968); 42 C.J.S. *Incest* § 2; Audrey W. Collins, Annotation, *Incest -- Half-Blood Relatives,* 34 A.L.R. 5th 729 (1995). The ecclesiastical courts followed the interdiction of Levitical law[12] which prohibited marriages between persons more closely related than fourth cousins unless a dispensation was procured from the Church of Rome; no distinction was made between persons related by affinity or consanguinity. Baker, 69 Cal. Rptr. at 597-98. In 1540, after England's separation from the Church of Rome, legislation was enacted to correct "an unjust law of the bishop of Rome" relating to the degrees in which marriages were permitted. Id. The revised statutes limited prohibitions against marriage to relatives closer than first cousins. Id. The ecclesiastical courts proclaimed the statute to be a return to "God's law." Id.

The English tradition prohibiting incest within certain degrees was adopted by the American colonists. American jurisprudence, however, deviated from the ecclesiastical law in two respects: the majority of American jurisdictions extended the proscriptions beyond that of first cousins while others only imposed criminal penalties where the relationship was consanguineous. Baker, 69 Cal. Rptr. at 597-98. Specific to our concern, Tennessee has traditionally recognized the proscription against incest as a punishable offense. See, e.g., Ch. 23, Section 18, Code of Tennessee (1829). The proscription continues as evidenced by today's challenged statutory provision, Tenn. Code Ann. § 39-15-302. Regardless of the manner of the proscription, the crime of incest is governed by specific statutes in every American jurisdiction. Id. at 596. There is nothing to suggest a movement away from the historical treatment of incest; Tennessee, as other states, continues to condemn it as a grave public wrong.

_____

[12]See *Leviticus* 18:6-18, 20:11-21.

9

To conclude that there exists a "fundamental right" to engage in an incestuous relationship, this court would be called upon to contradict centuries of legal doctrine and practice; which this court declines to do. See, e.g., Glucksberg, -- U.S. at --. 117 S.Ct. at 2269; Jackman v. Rosenbaum, 260 U.S. 22, 31, 43 S.Ct. 9, 9-10 (1922) ("If a thing has been practiced for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it."). The evidence is plain; the incest taboo is deeply rooted in Anglo-American history and traditions. Although one does have a general right to privacy, this right does not, by itself, warrant the sweeping conclusion that all intimate and personal decisions are so protected. See San Antonio Independent School Dist. v. Rodriquez, 411 U.S. 1, 33-35, 93 S.Ct. 1278, 1296-98 (1973). Accordingly, we are led to conclude that the asserted "right" to participate in adult consensual incest is not a fundamental liberty interest protected by the Tennessee Constitution. Accord People v. Hurd, 85 Cal. Rptr. 718, 726 (1970); Benton, 461 S.E.2d at 202; State v. Benson, 612 N.E.2d 337 (Ohio Ct. App. 1992); State v. Buck, 757 P.2d 861 (Or. Ct. App. 1988); Byrom v. State, 648 S.W.2d 440, 441 (Tex. App. 1983); State v. Kaiser, 663 P.2d 839, 843 (Wash. App. 1983); 41 AM.JUR.2d Incest § 3 (1995).

In the absence of a fundamental right, a rational basis test is used to examine the statute's constitutional validity. A legislative enactment will be deemed valid if it bears a real and substantial relationship to the public's health, safety, morals or general welfare and it is neither unreasonable nor arbitrary. See Nashville, C & L. Ry. v. Walters, 294 U.S. 405, 55 S.Ct. 486 (1935); Erstin v. Moss, 221 Tenn. 657, 430 S.W.2d 345, 348 (Tenn. 1968), cert. dismissed, 393 U.S. 318, 89 S.Ct. 354 (1969).

There is little doubt that the prohibition against incest is directly reflective of the moral concerns of our society. Some argument has been made that this is an inadequate rationale to support the ban. The law, however, is constantly based on notions of morality, and if all laws representing essentially moral choices are to be

10

invalidated, the courts would be very busy. Bowers v. Hardwick, 478 U.S. at 196, 106 S.Ct. at 2846. "[M]orality must and will remain a part of the criminal law." Commonwealth v. Wasson, 842 S.W.2d 487 (Ky. 1992) (Lambert, J., dissenting). The basis of criminal law exists because there are certain standards of behavior or moral principles which society requires to be observed; and the breach of them is an offense not merely against the person who is injured but against society as a whole. See DEVLIN, THE ENFORCEMENT OF MORALS 4, 6-18, 20, 20-23 (1959). Indeed, the destruction of morality renders the power of government invalid, government being no more than public order. See 16A AM.JUR.2d Constitutional Law § 367. Thus, criminal statutes prohibiting incestuous relationships reflect the belief that incest is a wrong against the public largely because of its potential to destabilize the family, traditionally regarded as society's most important unit. JOYCE MCCONNELL, INCEST AS A CONUNDRUM: JUDICIAL DISCOURSE ON PRIVATE WRONG AND PUBLIC HARM 1 Tex. J. Women & L. 143, 150 (Spring 1992).

Although the individual has a right to govern the course of his life, society, also, has its interests. "To reconcile the true boundaries between the individual and the community is the highest problem that thoughtful consideration of human society has to solve." JELLINEK, THE DECLARATION OF THE RIGHTS OF MAN AND OF CITIZENS 98 (1901). The balance to be achieved is the toleration of the maximum individual freedom that is consistent with the integrity of society. The law must protect the institutions and the community of ideas, political and moral, without which people cannot live together. Indeed, our legislature has proclaimed that one of the objectives of our criminal code is to "[p]roscribe and prevent conduct that unjustifiably and inexcusably causes or threatens harm to individual, property, or public interest for which protection through criminal law is appropriate." See Tenn. Code Ann. § 39-11-101(1) (1997).

The prohibition against incest is aimed at the protection of children and of the family unit.[13] See Sentencing Commission Comments, Tenn. Code Ann. § 39-15-302; see also Benton, 461 S.E.2d at 203. Society is concerned with the integrity of the family, see Douthitt v. State, 935 S.W.2d 241, 244 (Ark. 1996), because society cannot function in an orderly manner when age distinctions, generations, sentiments, and roles in families are in conflict. State v. Kaiser, 663 P.2d 839, 843 (Wash. App. 1983); see also 41 Am.Jur. 2d Incest § 3. The state has a legitimate and rationally based objective in prohibiting sexual relations between those related within the proscribed degrees of kinship to promote domestic peace and purity. See 42 C.J.S. Incest § 2. Accord Douthitt, 935 S.W.2d at 244; Baldwin, 112 Cal. Rptr. at 295; Hurd, 85 Cal. Rptr. at 726; Benton, 461 S.E.2d at 204; People v. York, 329 N.E.2d 845, 846-47 (Ill. App. 1975); Benson, 612 N.E.2d at 340; Buck, 767 P.2d at 861; Byrom, 648 S.W.2d at 441; Kaiser, 663 P.2d at 843; In the Interest of Tiffany Nicole M., 571 N.W.2d 872, 877 (Wis. App. 1997), perm. to appeal denied, (Wis. 1998); 41 AM. JUR. 2d Incest §3. We conclude that the state, in the exercise of its legislative function, may legitimately proscribe against acts which threaten public order and decency, including prohibitions against interfamilia sexual relations. Our pronouncements of these principles are consistent with and not contrary to deeply rooted traditions. We, therefore, hold that Tenn. Code Ann. § 39-15-302 does not violate the Constitution of the State of Tennessee.

The decision of the post-conviction court denying the appellant post-conviction relief is affirmed.

---

[13]Compare Tenn. Code Ann. § 39-15-302 (the offense of incest is classified under Chapter 15, Offenses Against the Family) with Tenn. Code Ann. § 39-13-502 (repealed 1997) (the offense of "homosexual acts" is classified as a sexual offense under Chapter 13, Offenses Against the Person).

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JAMES CURWOOD WITT, JR., Judge


_____
JOHN EVERETT WILLIAMS, Judge