# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVIILLE
### Assigned on Briefs January 27, 2004

## JAMES EDWARD DICKEN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sumner County**
**No. 341-2002     Jane W. Wheatcraft, Judge**

---

**No. M2003-01455-CCA-R3-CD - Filed June 25, 2004**

---

The petitioner, James Edward Dicken, appeals the denial of his petition for post-conviction relief. He contends that he was denied the effective assistance of counsel.  The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Louis W. Oliver, III, Hendersonville, Tennessee, for the appellant, James Edward Dicken.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; and Sallie Wade Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 29, 2001, the petitioner, originally charged with thirteen counts of incest, entered pleas of guilt to three counts of incest, a Class C felony. See Tenn. Code Ann. § 39-15-302 (1997) ("A person commits incest who engages in sexual penetration as defined in § 39-13-501, with a person, knowing such person to be, without regard to legitimacy . . . [t]he person's . . . stepchild[.]"). The facts, as summarized by the state at the submission hearing, are as follows:

> [T]he victim in this case, the [step-]daughter of the petitioner, . . . . had been having sexual intercourse with [the petitioner] for several months up to November of the year 2000.
> [The petitioner] was interviewed.  He . . . admitted the fact he had been engaging in sexual intercourse with [the victim].

The plea agreement provided for the following sentences, with the manner of service to be determined by the trial court:  five years on count 11, three years on count 12, and three years on

count 13. The plea agreement provided that the three-year sentences would be served concurrently with each other but consecutively to the five-year sentence, for an effective sentence of eight years. The trial court denied alternative sentencing, citing the petitioner's extensive criminal history and the need to avoid depreciating the seriousness of the offense. See Tenn. Code Ann. § 40-35-103(1)(B) (1997). There was no appeal.

At the evidentiary hearing on the petition for post-conviction relief, the petitioner acknowledged that he had provided a statement to the police admitting a sexual relationship with the victim, who was suffering from a terminal illness at the time; he claimed, however, that the police failed to provide Miranda warnings. He also contended that when he asked for an attorney during the interview, the investigating officer responded, "It is your money, if you want to waste your money for an attorney." The petitioner asserted that he asked trial counsel to file a motion to suppress the statement but trial counsel had advised, "[I]t wouldn't amount to anything." The petitioner acknowledged that he was aware of his right to have an attorney present during questioning and that one would be appointed if he could not afford one. He also conceded that the police informed him on more than one occasion that he was not under arrest, that he was free to go, and that he had not been charged with any crime.

Regarding his prior criminal history, the petitioner testified that although he had informed trial counsel that he had a number of convictions in Kentucky, including as many as eighteen felonies, some had been dismissed as part of a "package deal." He admitted that he did not tell his trial counsel that he had a prior Kentucky conviction for sexual abuse of the victim. While acknowledging that trial counsel informed him that he could receive a sentence of between two and eight years, the petitioner claimed that it was his understanding that he would receive a four-year probationary sentence. He insisted that he did not understand that incarceration was a possibility under the terms of the plea agreement, even though the trial court was empowered to make that determination. The petitioner admitted signing a waiver of his right to appeal the sentence. The petitioner also complained that trial counsel should have objected to the admission of the victim's videotaped statement at the sentencing hearing, claiming that the taped statement was in conflict with the statement she initially provided to police. The petitioner also complained that he was unable to submit to a psychosexual evaluation as ordered because trial counsel had not informed him that he would be required to pay part of the cost. The victim died prior to the sentencing hearing.

Officer Don Hardin of the Portland Police Department, who questioned the victim when her mother filed a complaint, testified at the evidentiary hearing that the victim admitted that she and the petitioner had been having sexual intercourse approximately three times a week for several months. According to Officer Hardin, when the victim informed the petitioner that the police had "found out" about their relationship, the petitioner responded, "What was done, was done." Officer Hardin stated that he explained to the petitioner that he was not under arrest. According to the officer, the petitioner agreed to an interview and traveled to the police station in his own vehicle. Officer Hardin testified that he again informed the petitioner that he was not under arrest and that he was free to leave at any time when he arrived for questioning. During the interview, the petitioner admitted having sex with the victim some thirty times, explaining that his wife would not have sex with him.

He also admitted being convicted of a prior sex crime involving the victim when she was six years old. Officer Hardin testified that the petitioner did not ask for an attorney.

Trial counsel, an Assistant Public Defender appointed to represent the petitioner at the arraignment, testified that the petitioner failed to arrive for their first scheduled appointment and later stopped by his office on a day when he was out. Another Assistant Public Defender interviewed the petitioner and provided her notes to trial counsel. Trial counsel remembered that the petitioner was difficult to contact because the telephone numbers he provided were either inaccurate or inoperable. When he finally met with the petitioner, they discussed the statement the petitioner had made to the police, which the petitioner admitted was true and accurate. According to trial counsel, the petitioner acknowledged that the investigating officers told him that he was free to leave at any time. Trial counsel also remembered that the petitioner admitted that he had been previously convicted of a sex crime involving the victim and had received a five-year sentence.

Trial counsel testified that the state originally offered the petitioner a ten-year sentence in exchange for his pleading guilty to three counts of incest and that when the state accepted his counter offer of an eight-year sentence, the petitioner agreed to plead guilty. Trial counsel testified that he informed the petitioner that probation was unlikely "in light of the fact he had been charged with 13 counts of incest with a physically infirm individual." He also told the petitioner that "if he were ordered to serve that eight-year sentence, that he would probably have to flatten, or expire, that sentence because of its being a sex offense." Trial counsel testified that he never told the petitioner that he would receive a four-year probationary sentence. According to trial counsel, the petitioner was "utterly disinterested in the case, and cared not what happened." It was trial counsel's opinion that because of the petitioner's criminal history, he faced Range III sentences of fifteen years on each of the thirteen counts. Trial counsel recalled that he had informed the petitioner that he would have to pay $100 for the psychosexual evaluation. It was counsel's opinion that the results of any evaluation would have had no effect on the outcome of the sentence.

Trial counsel testified that he did not object to the admission of the victim's videotaped statement at the sentencing hearing because he believed it was admissible as reliable hearsay. See Tenn. Code Ann. § 40-35-209(b) ( providing that reliable hearsay is admissible in a sentencing hearing so long as the opposing party has a fair opportunity to rebut the evidence); State v. Moss, 13 S.W.3d 374, 385 (Tenn. Crim. App. 1999) ("It is well settled in Tennessee that a trial court has statutory authority to admit trustworthy and probative evidence, including hearsay, for sentencing purposes."); see also State v. Flynn, 675 S.W.2d 494 (Tenn. Crim. App. 1984); State v. Chambless, 682 S.W.2d 227 (Tenn. Crim. App. 1984). As to the petitioner's claim that the victim had lied on the tape, trial counsel stated that "[the victim] could be stretching the truth, but that doesn't go to the admissibility, but rather to the weight." According to trial counsel, he advised the petitioner against taking the stand at the sentencing hearing but informed him that he could do so. He stated that he also told the petitioner that he had the right to appeal the sentence but that, in his opinion, an appeal would be fruitless.

At the conclusion of the hearing, the post-conviction court made the following findings:

The plea, . . . and I have read the submission, was an entirely . . . voluntary plea. This [c]ourt is very specific and clear about what is going on. I ask the defendants very pointed questions: if they understand; if they are satisfied with the services of the public defender. We went through, and he told me exactly what he was pleading to, the sentence he was getting, and the fact that he was guilty of the crime; so this was not an involuntary plea.

Now, over the [s]tate's strenuous objections, I allowed in, testimony concerning the confession and the unlawful arrest, only for the purpose of seeing whether or not, if that were an issue, that the defense attorney had properly addressed it; and, I think, in this case, from the proof in the record, it is abundantly clear that [trial counsel] asked him the circumstances under which he gave the statement.

And even today [the petitioner] said that they said to him, you can leave. Said, quote, "If you don't want to talk to us, you can leave," at which point he wrote out the statement.

But [trial counsel] asked all the appropriate questions: Were you in custody; did you know you were free to leave; were you coerced in any way, to which [the petitioner] replied, no. So I am convinced that, as it relates to ineffective assistance of counsel, there is no basis to set this agreement aside based on the confession or the arrest.

Now, that brings me to my last issue, which is ineffective assistance of counsel.

There was no psychosexual evaluation. Why? Because [the petitioner], even though he was working, could not muster the $100 to get it done.

He did state that he was convicted of a prior sex offense. That certainly came out at the hearing. To what extent it affected the [c]ourt, I don't know. I did mention it when I imposed the eight-year sentence, but with everything else the [c]ourt had seen, including the tape, and including the terrible prior record of [the petitioner], . . . I'm sure it would not have changed anything.

\*                          \*                          \*

Look, folks, [the petitioner] was facing a long time. He got a very good deal. He was not a particularly cooperative client. [Trial counsel] . . . did the absolute very best for him that could be done. I see nothing in the record, in everything that I've listened to today, to indicate there was any ineffective assistance of counsel, and that there is any basis at all on which to grant this petition for post-conviction relief.

In this appeal, the petitioner asserts that his trial counsel was ineffective by failing to conduct an adequate investigation of the statement, by failing to file a motion to suppress the statement, by failing to challenge the constitutionality of the incest statute, by failing to object to the admission of the victim's videotaped statement at the sentencing hearing, and by going forward with the sentencing hearing without the psychosexual evaluation. The state disagrees.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997).[1] Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

A petitioner seeking post-conviction relief on the basis of ineffective assistance of counsel, must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the petitioner makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

---

[1]In 2003, the Post-Conviction Procedure Act was renumbered within the Code. It now appears at sections 40-30-101 through 40-30-122.

The accredited testimony is that trial counsel had difficulty contacting the petitioner and that as a result, he was unable to meet with the petitioner as many times as he would have preferred. He stated that he did not conduct an investigation into the incriminating statement because the petitioner assured him that "what he told the police was true, accurate, voluntary, and not the result of force or coercion." The petitioner acknowledged that before he provided a written statement, the police informed him that he was not under arrest and that he was free to leave, facts that would have militated against suppression of the statement. See California v. Beheler, 463 U.S. 1121, 1125 (1983); Oregon v. Mathiason, 429 U.S. 492 (1977); Miranda v. Arizona, 384 U.S. 436, 444, 478-79 (1966). He also conceded that he was aware of his right to have an attorney present during the questioning and that the trial court would appoint an attorney if he could not afford one. The post-conviction court accredited the testimony of trial counsel that he had asked "all the appropriate" questions regarding the petitioner's statement. In our view, the evidence does not preponderate against the post-conviction court's finding that trial counsel's performance was not deficient.

With regard to the sentencing hearing, trial counsel stated that he did not request a continuance of the sentencing hearing so that the petitioner could obtain a psychosexual evaluation because the petitioner had informed him, only days before the hearing, that he did not have and would never be able to raise the $100 to pay the examiner. Further, trial counsel testified that he did not object to the admission of the victim's videotaped statement because he believed it was admissible as reliable hearsay, an assessment supported by the holding in Moss, 13 S.W.3d at 385, and the provisions of Tennessee Code Annotated section 40-35-209(b). The post-conviction court concluded that the results of the psychosexual evaluation, even if entirely favorable to the petitioner, would not have changed the outcome of the sentence. Under these circumstances, it is our view that the petitioner is not entitled to relief.

Although the petitioner suggests that trial counsel was ineffective for failing to challenge the constitutionality of the incest statute, he has not demonstrated that the statute is in fact unconstitutional. He has presented no authority suggesting that a constitutional challenge would have been successful. Further, this court has specifically held that the incest statute does not violate our state constitution. Smith v. State, 6 S.W.3d 512, 520 (Tenn. Crim. App. 1999). In consequence, he is not entitled to relief on this ground.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE