IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

JOHNATHAN DAVID ALEX,

Appellant.

No. 86887-0-I

DIVISION ONE

UNPUBLISHED OPINION

DíAZ, J. — Johnathan Alex challenges several conditions of community custody, which a court imposed after he pled guilty to rape of a child in the third degree, rape in the second degree, and tampering with a witness. The State asks us to decline review due to invited error or waiver, but concedes multiple errors, should we reach the merits. Where ripe, we are required, or choose to exercise our discretion, to consider the merits of Alex's claims and the State's concessions. As a result, we remand the judgment and sentence for the trial court to strike or amend several of the conditions of community custody.

I.    BACKGROUND

Alex pled guilty to one count each of rape of a child in the third degree, rape in the second degree, and tampering with a witness. This global plea resolved charges from four felony cases. The parties presented an agreed sentencing

recommendation of 111 months to life with lifetime community custody. The parties further agreed that the lifetime community custody conditions would be "provided in the [presentence investigation report, (PSI)]." And, Alex marked the box in the plea agreement stating, "[t]he sentence recommendation above, including [legal financial obligations, (LFOs)], is a joint agreement and is part of the plea agreement entered into herein."

The PSI—which was completed after the plea agreement was signed but before sentencing[1]—recommended that the court impose the conditions of supervision in "attached [Department of Corrections] DOC 09-131: PSI -Judgment & Sentence (Felony)- Appendix H Community Placement/Custody."

At sentencing, the trial court specifically ensured that the Judgment & Sentence (J&S) included Appendix H. The trial court stated, "I am following the agreed recommendation for the 111 months as well as the registration and the monitoring requirements. Do you have any questions about your obligations with respect to registration, um, or your obligations to D.O.C. following your release?" Defense counsel responded that there were no questions. The court also informed Alex that "Appendix H goes over all the obligations that you have with D.O.C." and asked defense counsel whether he went "over these fully with Mr. Alex?" Counsel replied, "We went over them at the time of the plea. I don't know that I have gone over that specific document there." The court explained that Appendix H "includes what the restrictions are going to be and what the requirements on D.O.C. will be,

---

[1] Alex pled guilty and the court accepted the plea agreement on January 2, 2024. The PSI is dated April 29, 2024. Alex was sentenced May 8, 2024.

so, um, I would encourage you to go over this with your attorney as well."

The trial court imposed the recommended sentence and the community custody conditions attached to the PSI. Alex now appeals several community custody conditions.

## II.    ANALYSIS

Alex challenges several conditions of community custody conditions for the first time on appeal. He contends that two conditions are unconstitutionally vague and other conditions violate his constitutional rights to privacy, familial association, and intimate association. The State argues that we should not review the claims because Alex either waived or invited any error, but concedes that, if we reach the merits of Alex's challenges, many of the conditions should be remanded to be struck or amended. After addressing the issue of invited error, we consider the reviewability and merits of each challenged community custody condition in turn.

### A.    Invited Error

The State argues that Alex's claims are precluded by invited error. The doctrine of invited error "is meant to prohibit a party from 'setting up an error at trial and then complaining of it on appeal.'" State v. Kelly, 4 Wn.3d 170, 194, 561 P.3d 246 (2024) (quoting In re Pers. Restraint of Breedlove, 138 Wn.2d 298, 312, 979 P.2d 417 (1999)). Invited error "requires affirmative actions to be taken to contribute to the error." Id. at 194-95. In assessing invited error, we consider whether a party affirmatively assented, materially contributed, or benefitted from the error. Id. at 195. Mere failure to object to an error does not amount to invited error. State v. Tatum, 23 Wn. App. 2d 123, 128-29, 514 P.3d 763 (2022). The

State bears the burden of proving that error was invited. Id. at 129.

As part of his plea agreement, Alex checked the box indicating that he agreed with the recommended sentence including the community custody conditions in the PSI. However, the PSI was not completed at the time of Alex's plea. The record is unclear as to whether Alex was provided with the specific community custody conditions at the time that he pleaded guilty and could affirmatively assent to them. During the sentencing hearing, Alex represented to the court that he had reviewed the custody conditions, although not necessarily Appendix H, at the time of the plea. He failed to object to the conditions but did not affirmatively assent.

The State has not proven that Alex invited any error and, therefore, the invited error doctrine does not preclude our review of the challenged community custody conditions.

B.     Community Custody Conditions

Alex did not object to the community custody conditions during his sentencing. The State claims that Alex has waived any challenge. However, "'[i]n the context of sentencing, established case law holds that illegal or erroneous sentences may be challenged for the first time on appeal.'" State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008) (quoting State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999)). This includes community custody conditions which "may be challenged for the first time on appeal and, where the challenge involves a legal question that can be resolved on the existing record, preenforcement." State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019).

Because he challenges the conditions for the first time on appeal, Alex "is not entitled to review unless he can show that (1) his challenge 'is ripe for review on its merits' and (2) the . . . conditions are a 'manifest error affecting a constitutional right.'" State v. Nelson, 4 Wn.3d 482, 493, 565 P.3d 906 (2025) (citing State v. Cates, 183 Wn.2d 531, 534, 354 P.3d 832 (2015); RAP 2.5(a)(3)); State v. Reedy, 26 Wn. App. 2d 379, 391-92, 527 P.3d 156 (2023). Once these criteria are established, we review community custody conditions for abuse of discretion. Wallmuller, 194 Wn.2d at 238. "A trial court necessarily abuses its discretion if it imposes an unconstitutional community custody condition." Id.

1. Conditions (b)(8) and (b)(12)

Alex contends that condition (b)(8)—which states, "[y]ou must consent to DOC home visits to monitor your compliance with supervision. Home visits include access for the purpose of visual inspection of all areas of the residence. . ."—and condition (b)(12)—which states, "[i]Internet devices found in your possession are subject to search"—permit limitless searches of his home and internet devices and violate his right to privacy. This claim is not ripe for review at this time.

A preenforcement challenge to community custody conditions is ripe for review when the issues are primarily legal, do not require further factual development, and the action is final. Cates, 183 Wn.2d at 534. Additionally, we consider the hardship to the petitioner if we refuse to review the condition on direct appeal. Id.

In Cates, our Supreme Court considered a community custody condition identical to condition (b)(8) imposed on Alex and determined that the challenge

5

was not ripe for review. 183 Wn.2d at 533-36. The Court noted that "[t]he condition as written does not authorize any searches, and whether inspecting Cates' residence or computer, the State's authority is limited to that needed 'to monitor [Cates'] compliance with supervision." Id. at 535 (citing RCW 9.94A.631(1)). A future attempt to enforce the community custody condition might violate Cates' constitutional right to privacy, but the specific factual circumstances are necessary to assess any possible misapplication of the condition. Id. "Further factual development is therefore needed--- the State must attempt to enforce the condition by requesting and conducting a home visit" after release from confinement. Id. Moreover, the Court determined that Cates would not suffer significant risk of hardship as compliance did not require him "to do, or refrain from doing, anything upon his release until the State requests and conducts a home visit." Id. at 536. Given that Alex's condition (b)(8) is identical to the provision in Cates, a preenforcement challenge is not ripe for review.

Similarly, an attempt to enforce community custody condition (b)(12), which specifies that Alex's internet capable devices are subject to search, may result in a future violation of his right to privacy. However, as no search has occurred, any misapplication of the condition is speculative. As in Cates, the State must attempt to enforce the condition before we can assess its application. Because further factual development is necessary, the search provision of condition (b)(12) is not ripe for preenforcement review.

2. Conditions (a)(9) and (b)(5)

Alex argues that conditions (a)(9) and (b)(5) are unconstitutionally vague.

Condition (a)(9) requires that Alex "[r]emain within geographic boundary, as set forth in writing by the Community Corrections Officer." Condition (b)(5) prohibits Alex from "seek[ing] employment or volunteer positions that would place [him] in contact with or control over minors." The State concedes that both conditions are impermissibly vague.

Our Supreme Court has flatly held that "vagueness challenges to conditions of community custody may be raised for the first time on appeal." Bahl, 164 Wn.2d at 745. Here, both conditions present legal questions which do not require further factual development and are, therefore, also ripe for preenforcement review. See id. at 752 ("In many cases, vagueness questions will be amenable to resolution as questions of law."); State v. Sanchez Valencia, 169 Wn.2d 782, 788-89, 239 P.3d 1059 (2010) (no further factual development is necessary when the condition at issue places immediate restriction on conduct without any action by the State).

"A condition of community custody is unconstitutionally vague if it either fails to give fair warning of what is forbidden or fails to give ascertainable standards that will prevent arbitrary enforcement." State v. Johnson, 197 Wn.2d 740, 747, 487 P.3d 893 (2021). The State acknowledges that community condition (a)(9) is unconstitutionally vague and should be struck. We accept this concession. Our courts have determined that community custody conditions requiring further definition from CCOs are unconstitutionally vague because they do not provide

ascertainable standards for enforcement and allow for arbitrary enforcement.[2] See Bahl, 164 Wn.2d at 757-58; State v. Irwin, 191 Wn. App. 644, 654-55, 364 P.3d 830 (2015). As such, the judgment and sentence must be remanded to strike community custody condition (a)(9).

As for provision (b)(5)—which again prohibits him from "seek[ing] employment or volunteer positions that would place [him] in contact with or control over minors"—Alex argues that the condition is unclear as to "what it would mean for a job to place [him] 'in contact with minors.' "

The State concedes that (b)(5) is impermissibly vague. The concession is well taken. "Without some clarifying language or an illustrative list" the community custody condition does not provide Alex with sufficient notice of the proscribed conduct. Irwin, 191 Wn. App. at 655. The State recommends clarification by specifying that Alex may not have "unsupervised contact" with minors or including a non-exclusive, illustrative list of prohibitions. See Wallmuller, 194 Wn.2d at 245. We remand to the trial court to amend community custody condition (b)(5).

3. Conditions (b)(2), (b)(3), and (b)(4)

Alex contends that conditions (b)(2), (b)(3), and (b)(4), which generally prohibit his contact with minors, are overbroad and unconstitutionally infringe on

---

[2] Recent unpublished decisions have concluded that the same provision at issue is unconstitutionally vague. See In re Pers. Restraint of Alaniz, No. 39631-2-III, slip op. at 14-15 (Wash. Ct. App. Mar. 21, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/396312_unp.pdf; In re Pers. Restraint of Bratcher, No. 39758-1-III, slip op. at 5-6 (Wash. Ct. App. Apr. 2, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/397581_unp.pdf. These cases are cited for their persuasive value pursuant to GR 14.1 as they are necessary for a reasoned decision.

his right to familial associations.[3]  Condition (b)(2) states, "do not have contact with minors unless you receive prior written approval from your Community Corrections Officer;" condition (b)(3) states, "you shall not stay overnight in a residence where there are minor aged children without the express, prior approval of your Community Corrections Officer;" and condition (b)(4) states, "[d]o not reside with minors without prior, written approval of your Community Corrections Officer." According to Alex, "these conditions were drafted so broadly that they cover minor relatives, including Mr. Alex's own child."

"The rights to marriage and to the care, custody, and companionship of one's children are fundamental constitutional rights, and state interference with those rights is subject to strict scrutiny."  State v. Warren, 165 Wn.2d 17, 34, 195 P.3d 940 (2008).  Restrictions on those rights must be sensitively imposed and reasonably necessary to accomplish the needs of the State and public order.  State v. Geyer, 19 Wn. App. 2d 321, 327-28, 496 P.3d 322 (2021).  "[A] condition infringing on the right to parent one's child can only be upheld if the condition is reasonably necessary to accomplish the essential needs of the State and public order."  Reedy, 26 Wn. App. 2d at 394.

Here, the State concedes that these conditions should be modified to allow Alex contact with his biological child(ren).  We agree and remand for the trial court

---

[3] Case law discussing prohibitions that implicate the constitutional rights to familial or intimate relationships, such as conditions (b)(2), (b)(3), (b)(4), and (b)(9), generally proceed directly to an analysis of the issues without addressing manifest constitutional error or waiver under RAP 2.5(a).  See, e.g., State v. Warren, 165 Wn.2d 17, 31-34, 195 P.3d 940 (2008); State v. Gantt, 29 Wn. App. 2d 427, 458, 540 P.3d 845 (2024); State v. Geyer, 19 Wn. App. 2d 321, 326-28, 496 P.3d 322 (2021).  We shall proceed accordingly.

to amend community custody conditions (b)(2), (b)(3), and (b)(4) such that they do not impermissibly burden Alex's right to parent his child(ren).

Alex also argues that these conditions violate his right to familial associations with minor-aged members of his family other than his own child(ren). However, "[t]he fundamental right to raise a child does not appear to extend far, if at all, beyond the immediate relationship between parent and child." State v. Gantt, 29 Wn. App. 2d 427, 458, 540 P.3d 845 (2024). Thus, the same constitutional protections do not apply to Alex's relationship with other relatives.

While Alex argues that his crimes did not involve family and, therefore, community custody conditions should not restrict his contact with members of his family, his crimes involved minors. Restrictions on association may be imposed "to the extent necessary to further the State's interest in protecting children." State v. Frederick, 20 Wn. App. 2d 890, 911, 506 P.3d 690 (2022). Limiting Alex's access to minors, including those related to him, furthers the State's interest in protecting children. These conditions do not impermissibly burden his right to association with respect to minor-aged family members other than his child(ren).

4.  Right to Intimate Association

Alex argues that condition (b)(9)—which prohibits him from "enter[ing] any new dating or sexual relationships with individuals who have minor-aged children without approval from [his] Community Corrections Officer. [His] offense history must be disclosed to any potential partner for approval to be received"—violates

his constitutional right to intimate association.[4]

"The First Amendment protects a person's freedom of association, including intimate association," but these rights may be limited if sensitively imposed and reasonably necessary to accomplish the essential needs of the state. Frederick, 20 Wn. App. 2d at 909-10; U.S. CONST. amend I. According to Alex, condition (b)(9) is not sensitively imposed because he did not use prior romantic relationships with adults to access minor children.

The right to form new intimate relationships may be infringed "but only to the extent necessary to further the State's interest in protecting children." Id. at 911. Courts have recognized that "potential romantic partners may be responsible for the safety of live-in or visiting minors." State v. Autrey, 136 Wn. App. 460, 468, 150 P.3d 580 (2006). Thus, the State's interest in protecting minors is furthered by limiting opportunities for Alex to come into contact with them, including through potential intimate partners. Imposition of this community custody condition was not an abuse its discretion.

5. Conditions (a)(5), (a)(12), and (b)(12)

---

[4] As with the right to familial relationships, case law discussing prohibitions that implicate the constitutional right to intimate relationships, such as condition (b)(9), generally proceed directly to an analysis of the issues without addressing manifest constitutional error or waiver under RAP 2.5(a). See, e.g., Geyer, 19 Wn. App. 2d at 326-28; State v. Mansour, No. 78708-0-I, slip op. (unpublished portion) at 33-34 (Wash. Ct. App. Aug. 24, 2020) https://www.courts.wa.gov/opinions/pdf/787080.pdf; State v. Mecham, No. 79008-1-I, slip op. at 11-16, (Wash. Ct. App. Mar. 2, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/790081.pdf. These unpublished cases are cited only for their persuasive value according to GR 14.1. Again, we shall proceed with the analysis accordingly.

Finally, Alex challenges several financial obligations imposed by his conditions of community custody. Condition (a)(5) requires him to "[p]ay supervision fees as determined by the Department of Corrections," (a)(12) requires him to "[s]ubmit to periodic polygraph assessments at [his] own expense," and (b)(12) requires him to "install an internet monitoring program, on devices capable of using the software, at [his] own expense."

While Alex did not object to these costs, "appellate courts 'regularly exercise their discretion to reach the merits of unpreserved LFO arguments' because LFOs can create a significant hardship for indigent defendants and severely hinder their reintegration into society." State v. Ortega, 21 Wn. App. 2d 488, 498, 506 P.3d 1287 (2022) (quoting State v. Glover, 4 Wn. App. 2d 690, 693, 423 P.3d 290 (2018)).

The State concedes that the record indicates that the trial court intended to waive all discretionary LFOs and that such LFOs are not appropriately imposed on indigent defendants. We accept this concession. Alex was found indigent and the court expressed its intention to waive fees. On remand, these costs should be struck from the community custody conditions. See State v. Nunez, No. 57707-1-II, slip op. at 3-5, (Wash. Ct. App. Jan. 30, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2057707-1-II%20Unpublished%20Opinion.pdf.[5]

III.   CONCLUSION

---

[5] Although Nunez is unpublished, we may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned discussion." GR 14.1(c).

We affirm Alex's conviction but remand to the trial court to strike conditions (a)(5) and (a)(9) and amend conditions (a)(12), (b)(2), (b)(3), (b)(4), (b)(5), and (b)(12) in keeping with this opinion.

_Díaz, J._

WE CONCUR:

_Feldman, J._         _Smith, J._